IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RIO GRANDE UNDERWRITERS, INC. | § § § § § | |
| | § | CIVIL ACTION |
| VS. | § § | NO. B-01-022 |
| | § § § § | |
| PITTS FARMS, INC. | § | |

## SUPPLEMENTAL BRIEF IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS

PITTS FARMS, INC. files this Supplemental Brief in Support of Respondent's Motion to Dismiss and says:

1. Applicant originally filed in this court, an Application for Stay Order and pursuant to this court's order subsequently filed a document styled, "Authentication of Exhibits." Respondent filed a Motion to Dismiss which contained authorities supporting the motion and asserted, among other things, that this Court had no jurisdiction of the Application because the Court would have no jurisdiction over the underlying dispute.

2. On April 18, 2001, this Court issued an order for the Applicant to respond by May 7, 2001 to the Motion to Dismiss and stated in the order that the Applicant had not alleged an independent basis for federal jurisdiction.

3. The Applicant (Plaintiff) then filed with the court a First Amended Application for Stay

Order and a Response to Respondent's Opposition to Arbitration. Counsel for Applicant certified to the Court that a copy of the First Amended Application for Stay Order was mailed on May 4, 2001. In fact, the mailing was on May 7, 2001 as shown by the attached copy of the envelope which was received by counsel for Respondent on May 10, 2001.

4. Significantly, none of the authorities cited by Applicant support Applicant's position under the facts of this case, and the Applicant has not favored the Court with a copy of the state court petition either in its Original Application for Stay Order, its Amended Application for Stay Order or in its Response to the Respondent's Opposition to Arbitration. Obviously, the best evidence of whether the underlying suit involves interstate commerce is the petition in the state court. Attached is a copy of such petition.

5. As shown by the petition filed in state court, and contrary to the allegations made by the petitioner in the Application for Stay Order, this case does not involve a federal question nor does it involve a contract affecting interstate commerce. This case does not involve an out-of-state entity and does not involve insurance premiums or where they are sent. The subject matter of the suit does not involve federal crop insurance. The State Court suit is a suit for negligence and breach of an agreement between the Plaintiff and Defendant in State Court which caused the Plaintiff to be unable to collect for loss of a crop. The Plaintiff has not sued the insurance company that issued the crop insurance, so it is not a suit against the insurance company. Nor is it a suit on the crop insurance policy. It is a suit by a Texas resident against another Texas resident for negligence and breach of contract, which incidently, involves the Defendant's failure to follow a federal regulation.

6. For there to be federal jurisdiction, there would have to be either diversity of citizenship (which there is not) or a federal question pursuant to 28 U.S.C. §1331 which requires that the action arise under laws of the United States. For this test to be satisfied, the federal law must create the cause of action, and the cause of action must possess a substantial federal question. *Merrell Dow*

2

*Pharmaceuticals Inc. vs. Thompson,* 478 U.S. 804, 106 S. Ct. 3229 (1986). In *Merrell Dow,* a suit was brought in state court alleging deformities when a mother ingested Bendectin during pregnancy. The theories of negligence, breach of warranty, strict liability, fraud and gross negligence were pled. Plaintiff also pled that the drug was "misbranded" in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), and that the inadequate warning made its use potentially dangerous. Plaintiffs alleged that the violation of the FDCA, "in promotion" of Bendectin "constitutes a rebuttable presumption of negligence" and that violation of the federal statutes directly and proximately caused plaintiff's injuries. The Supreme Court held that the case did not pose a federal question because there was no federal law that created any cause of action, and that the Court would not provide a private federal remedy for a violation of the federal statute when congress had not done so. The Court also stated on page 3234:

> ... We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of the federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law.

Likewise, there is no federal law in this case that creates any cause of action.

In *Oliver vs. Trunkline Gas Co.,* 796 F.2d 86 (5th Cir. 1986), the Fifth Circuit had before it the question whether there was federal jurisdiction in a contract dispute where the complaint made a general illusion to the Natural Gas Act, and the plaintiff argued that the suit was somehow implicitly a suit to enforce rights under the federal statute. The Fifth Circuit said,

3

In the present case, the resolution of a question of federal law will be necessary only because the parties to a private contract chose to 'incorporate' a federal regulatory standard by reference. In an analogous situation – where a state law incorporates federal law as the applicable state standard – it has occasionally been suggested that this is enough to create federal-question jurisdiction. *See, e.g., Agricultural Transportation Association v. King*, 349 F.2d 873, 875 - 876 (5th Cir. 965). The Supreme Court has now rejected this suggestion, at least for cases in which the state claim is based on a violation of a federal statute for which Congress has declined to provide a private a private, federal cause of action. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, ___ U.S. ___, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

In the case at bar, there is no federal statue which creates a federal cause of action. The cause of action is a state court action for negligence and breach of contract, and the incidental reference to a violation of a federal regulation as a basis for negligence does not create a federal question which would give this court jurisdiction.

WHEREFORE, Premises Considered, Respondent and Movant prays that the Court dismiss the Applicant's Application for Stay Order.

Respectfully submitted,

_____
O.C. Hamilton, Jr.
State Bar 08847000
Federal I.D. 2253
818 Pecan/P.O. Box3725
McAllen, Texas 78521
Phone: (956) 682-5501
Fax:   (956) 686-6109
ATTORNEY FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing document on Denis Downey at 1185 FM, Suite 3, Brownsville, Texas 78521 on this 11th day of May, 2001 by regular mail:

_____
O.C. Hamilton, Jr.

5

**DENIS A. DOWNEY LL.M.**
*Attorney at Law*
1185 FM 802, Suite 3
Brownsville, Texas 78526-1538

Hon. O.C. Hamilton, Jr.
ATLAS & HALL, L.L.P.
818 Pecan
P.O. Box 3725
McAllen, Texas 78502-3725

CAUSE NO. C-055-01-F

**FILED** AT \_\_\_\_\_ O'CLOCK \_\_\_\_\_ M

JAN 10 2001

PAULINE G. GONZALEZ, CLERK
District Courts, Hidalgo County
By_____Deputy

| | | |
|---|---|---|
| PITTS FARMS, INC.<br>*Plaintiff,* | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| VS. | §<br>§<br>§ | HIDALGO COUNTY, TEXAS |
| RIO GRANDE UNDERWRITERS, INC.<br>*Defendant.* | §<br>§ | 332 JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

PITTS FARMS, INC., Plaintiff, files this Original Petition against RIO GRANDE UNDERWRITERS, INC., Defendant, and for cause of action says:

1. Discovery in this case is intended to be conducted under Level 3 of Rule 190.

2. PITTS FARMS, INC. is a Texas corporation having its principal place of business in Hidalgo County Texas where it conducts its operations. Defendant is a Texas corporation having its principal place of business in Los Fresnos, Texas and service of process can be had upon Defendant by serving it's registered agent, Evan C. Steinman, III, 1/8 mile West Hwy 100, Los Fresnos, Texas 78566.

3. Venue is proper in Hidalgo County pursuant to Section 15.002 Civil Practice and Remedies Code, because a substantial part of the events or omissions giving rise to the claims occurred in Hidalgo County, Texas. The crops in question were grown in Hidalgo County, the loss occurred in Hidalgo County and Defendant inspected the crops for insurance purposes in Hidalgo County.

4. Plaintiff is engaged in farming operations in Hidalgo County, Texas and, for each of a number of years, has purchased crop insurance from Defendant, who has procured such insurance from various insurance companies who write crop insurance.

5.  During the several years that Plaintiff has been obtaining crop insurance through Defendant, Plaintiff has always been led to believe by representations made by Defendant that Defendant would procure for the Plaintiff insurance on Plaintiffs' crops and would prepare the necessary documents and forms and assist Plaintiff in preparing such forms required to be prepared by Plaintiff so that Plaintiff would receive maximum benefits from the insurance in the event of a loss.

6.  Part of the design of crop insurance involves designating separate units which are either specific crops or specific parcels of land, each of which stands on its own as an insurable unit. It is, and always has been desirable to have as many units as possible so that maximum benefits can be obtained from the insurance in the event of a loss. Plaintiff has always told Defendant that it wants such maximum coverage and Defendant has always agreed to prepare the paperwork in such a manner that maximum benefits can be obtained in the event of a loss. While Plaintiff is asked to provide certain information and to fill out some forms, Plaintiff does not understand the insurance business and has always relied on Defendant to see to it that the forms are properly filled out to provide maximum benefits in the event of a loss.

7.  In 1999, Plaintiff procured from Defendant insurance to cover it's 2000 onion crop. Based on the prior dealings between the parties, the representations made by Defendant and the understanding between the parties, Plaintiff relied on the Defendant to prepare the papers to provide insurance coverage that would provide maximum benefits in the event of a loss. Such maximum insurance coverage is afforded by dividing the farms or crops into as many units as possible, each of which stands on its own as an insurable unit and is unaffected by the production of other units.

8. To implement this policy of maximum insurance coverage, the Federal Crop Insurance Corporation, who administers the crop insurance program, enacted regulations which were promulgated for the 2000 onion crop. Such regulations are found in 7CFR Section 457.135. That section provides that instead of establishing optional units as provided in Section 34 of the basic provisions of the policy, optional units may be established by type if the type is designated in the special provisions. In the special provisions, types of onions were broken down into reds, whites and yellows as the three different types. Thus, the Defendant should have filled out the forms to designate a separate unit for red onions and a separate unit for yellow onions, in order to provide Plaintiff with maximum benefits in the event of a loss. Instead the defendant designated red onions and yellow onions together as one unit which violates the regulations and the duty it owed to Plaintiff. Such conduct also violated the specific instruction of the Plaintiff, was contrary to the representations which Defendant had always made to Plaintiff and constituted a breach of the agreement which Plaintiff had always had with Defendant.

9. Defendant not only made misrepresentations to the Plaintiff with regard to providing the Plaintiff with the maximum insurance protection, but also breached an expressed or implied contract which Plaintiff had with Defendant by the terms of which Defendant agreed to provide Plaintiff with insurance coverage on Plaintiffs crops which would provide maximum benefits in the event of a loss. Defendant breached such contract by not designating Plaintiff's units as provided by regulation and as requested by Plaintiff. In the alternative, Plaintiff alleges that Defendants conduct was committed knowingly or constituted negligence or gross negligence.

10. Because the Defendant failed to designate Plaintiffs units properly, the insurance company who issued the crop insurance failed to pay for the loss of Plaintiffs entire red onion crop, which was insured for $12,657.00. Plaintiff seeks actual damages for that amount.

11. This suit is brought for actual damages caused by the Defendant and arising from violations of statutory and common law duties, breaches of contract and violations of the Texas Deceptive Trade Practices Act Section 17.46 and Section 17.50, Texas Business and Commerce Code.

12. In addition to the actual damages suffered by Plaintiff, Plaintiff will show that, as an example to others to deter similar misconduct, and as a penalty or by way of punishment of this Defendant, the Plaintiff asks the court and jury to assess punitive damages against the Defendant. Plaintiff seeks the amount of punitive to be determined by the sound discretion of the jury and to be assessed against the Defendant in an amount not to exceed the larger of four (4) times the actual damages found to have been caused by the conduct of Defendant or $200,000.00.

13. Without prejudice to the above and foregoing, Plaintiff asks the court and jury to award enhanced damages pursuant to the Texas Business and Commerce Code, Section 17.5(b)(1).

14. Prior to the filing of this suit, Plaintiff gave Defendant statutory notice required to comply with the Deceptive Trade Practice Act and this suit is filed more than sixty (60) days from the date of such notice.

15. Plaintiff had to employ attorneys to represent it to recover monies that are rightfully due it from the Defendant and Plaintiff seeks to recover from the Defendant reasonable attorneys fees to prosecute this claim, both at the trial level and on any appeal to the Court of Appeals or the Supreme Court of Texas. In this connection, Plaintiff says that the reasonable amount for attorneys fees at the trial court level is not less than $10,000.00, the reasonable attorney fees for the appeal to the

Court of Appeals is not less than $15,000.00 and the reasonable attorney fees for an appeal to the Texas Supreme Court is not less than $20,000.00

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear herein as required by law and that upon final hearing hereof the Plaintiff have judgment against Defendant for the following:

a. Actual damages in the sum of $12,657.00;

b. For enhanced damages, all as set out above;

c. For punitive damages, all as set out above;

d. For all applicable statutory penalties;

e. For reasonable and necessary attorneys' fees;

f. For all costs incurred herein;

g. Pre and post judgment interest at the maximum lawful rates; and

h. For such other relief, both general and special, in law and in equity to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

ATLAS & HALL, L.L.P.
Post Office Box 3725
818 Pecan
McAllen, Texas 78502-3725
Telephone: (956) 682-5501
Telecopier: (956) 686-6109

By: _____
O. C. Hamilton, Jr.
State Bar No. 08847000
ATTORNEY FOR PITTS FARMS

*Plaintiff's Original Petition*
*F:\OCH\PittsFarmsvRioGrand*
*Underwriters\OriginalPetition*

Page 5 of 5